IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 20-cv-02250-CMA-MEH

NOAH M. RAEL,

    Plaintiff,

v.

JUSTIN CALKINS,

    Defendant.

**ORDER**

This matter is before the Court on Defendant Justin Calkins's Motion for Summary Judgment (Doc. # 32). The Motion is granted for the following reasons.

I.    **BACKGROUND**

This is a 42 U.S.C. § 1983 case arising from the arrest of Plaintiff Noah Rael. Plaintiff was camping with family at a state park in Larimer County, Colorado, when a park ranger, Robert Brannon, approached the campers and asked them to turn off their music. (Doc. # 23, ¶¶ 8-12). What happened next is not exactly clear, but somehow, this interaction led to a "physical altercation," between Brannon and Plaintiff's nephew, Troy Rael. (Doc. # 23, ¶ 14). While Brannon was struggling with Troy, two of the other campers joined the fight. (Doc. # 32-1, p. 102). Brannon eventually broke free of the three campers, "drew his taser, pointed it at Troy, and called for backup." (Doc. # 23, ¶ 19).

1

Several members of local law enforcement responded to the scene, including Defendant, Larimer County Sheriff's Department Corporal Justin Calkins. (Doc. # 23, ¶ 20). When they arrived, Ranger Brannon told the officers what had happened, and he identified his three assailants as Troy Rael; Troy's son, Nathaniel Rael; and Plaintiff, Noah Rael. (Doc. # 32-1, p. 102). Corporal Calkins took Troy Rael into custody while Brannon handcuffed Nathaniel Rael and Plaintiff. (Doc. # 32, ¶¶ 24-28).

Ranger Brannon was evaluated by medical personnel on scene, and it was determined that he should be transported to the hospital for further evaluation. (Doc. # 32, ¶ 33). At that point, Corporal Calkins took over the investigation. (Doc. # 32, ¶ 33). Calkins transported the three suspects to the jail, booked them, and filed an incident report. (Doc. # 32, ¶ 33). Plaintiff was charged with resisting arrest and assaulting an officer. (Doc. # 23, ¶ 66). The charges were dismissed a few months later. (Doc. # 32, ¶ 55).

Plaintiff now contends that his arrest and prosecution were unlawful. Though he does not dispute that three members of his party assailed Ranger Brannon, he claims that he was not among the combatants. Rather, Plaintiff contends, "the actual third person involved in the altercation was either [Troy's son] Damius Rael or [Damius's friend] Gustavo Carillo." (Doc. # 23, ¶ 87). Plaintiff claims that, if Corporal Calkins had investigated the incident further, he would have realized that Ranger Brannon was mistaken when he identified Plaintiff as the third assailant. (Doc. # 23, ¶¶ 84-90). Therefore, he argues, Corporal Calkins had no probable cause to arrest him or charge him with a crime. Plaintiff also contends that Corporal Calkins's true motivation for

arresting him was to retaliate against Plaintiff for criticizing law enforcement and for filming the ensuing police investigation. (Doc. # 23, ¶ 113). Plaintiff is suing Calkins under 42 U.S.C. § 1983, alleging false arrest, malicious prosecution, and First Amendment retaliation. (Doc. # 23, ¶¶ 81-117; Doc. # 32-1, p. 76).

Corporal Calkins seeks summary judgment on all of Plaintiff's claims. (Doc. # 32). He contends that Plaintiff's claims must fail as a matter of law because (1) Corporal Calkins did not arrest Plaintiff, Ranger Brannon did; (2) Plaintiff's arrest and prosecution were supported by probable cause; and (3) Plaintiff has failed to allege facts to support his First Amendment retaliation claim. (Doc. # 32).

## II.     LEGAL STANDARDS

### A.     SUMMARY JUDGMENT

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). Once the movant meets its initial burden, however, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

### B. QUALIFIED IMMUNITY

Corporal Calkins asserts that he is entitled to qualified immunity.[1] When a defendant asserts qualified immunity, the summary judgment standard is subject to a "somewhat different analysis from other summary judgment rulings." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006). Once the defense of qualified immunity is raised, the burden shifts to the plaintiff to show (1) "that the defendant's actions violated a specific statutory or constitutional right," and (2) that the right was "clearly established at the time of the conduct at issue." *Id.*; *see also Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015) (the qualified immunity defense "trigger[s] a well-settled twofold burden" that the plaintiff is "compelled to shoulder.").

"It is only after plaintiff crosses the legal hurdle comprised of his or her two-part burden of demonstrating the violation of a constitutional right that was clearly established, that courts should be concerned with the true factual landscape[.]"[2] *Id.* at 1326 (emphasis in original). Considering the true factual landscape, "courts should determine whether defendant can carry the traditional summary judgment burden of establishing that there are no genuine issues of material fact for jury resolution and that defendant is entitled to judgment as a matter of law." *Id.*

---

[1] "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[2] "In determining whether a plaintiff has carried its two-part burden . . . ordinarily courts must adopt plaintiff's version of the facts." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1325 (10th Cir. 2009) (Holmes, J., concurring) (internal quotations and citation omitted). However, "plaintiff's version of the facts must find support in the record." *Id.*

4

## III. ANALYSIS

### A. FALSE ARREST

Plaintiff first alleges that Corporal Calkins arrested him without probable cause. (Doc. # 23, ¶¶ 81-103). Specifically, Plaintiff contends that Corporal Calkins should have known that Ranger Brannon's version of events was "fishy"; that Plaintiff claimed to be innocent; and that there were witnesses on scene who would corroborate Plaintiff's claim of non-involvement. (Doc. # 23, ¶¶ 84-87). "Calkins' failure to apprise himself of these easily obtainable facts," Plaintiff's argues, "was objectively unreasonable" and rendered the arrest unlawful. (Doc. # 23, ¶ 88).

Calkins counters that Plaintiff's false arrest claim must fail because (1) Calkins did not arrest Rael – Brannon did; and (2) the arrest was valid because there was arguable probable cause to believe Plaintiff had committed a crime. (Doc. # 32, p. 13).

The Court agrees with Calkins.

#### 1. Corporal Calkins Did Not Arrest Plaintiff

There is no genuine dispute that Plaintiff was arrested by Ranger Brannon, not by Corporal Calkins. The parties agree that Ranger Brannon, not Corporal Calkins, identified Plaintiff as one of his assailants; that Ranger Brannon detained Plaintiff until backup arrived; and that Ranger Brannon handcuffed Plaintiff on scene and transported him to a patrol car. (Doc. # 32, ¶¶ 26-27). Corporal Calkins never even spoke to Plaintiff until he was already in custody, handcuffed, and sitting in the back of a patrol car. (Doc. # 32, ¶ 39). Although Corporal Calkins later transported Plaintiff to the county jail and filed an affidavit in support of Plaintiff's arrest, he did so not because he had arrested

Plaintiff, but because the arresting officer, Ranger Brannon, was hospitalized and unable to continue with the investigation. (Doc. # 32, ¶¶ 33-34; Doc # 32-1, p. 95). To establish liability for a constitutional violation under 42 U.S.C. § 1983, "[t]he plaintiff must show the defendant personally participated in the alleged violation." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). Because the undisputed facts show that Corporal Calkins did not arrest Plaintiff, Plaintiff's false arrest claim against Corporal Calkins must fail as a matter of law.

Plaintiff argues, however, that "the initial detention was merely an investigatory detention," and that "Calkins violated Plaintiff's rights when he later arrested him without probable cause." (Doc. # 38, p. 13). This argument fails for at least three reasons.

First, Plaintiff makes no effort to identify the moment when the initial "investigatory detention" transformed into a formal arrest. He merely asserts that Calkins arrested him "later." (Doc. # 38, p. 13). This conclusory assertion is insufficient to establish a constitutional violation. *Jenkins*, 81 F.3d at 994 ("[C]onclusory allegations are not sufficient to state a constitutional violation.").

Next, this argument is contradicted by Plaintiff's own sworn testimony. Plaintiff conceded at his deposition that, once Ranger Brannon handcuffed him, he knew he was under arrest: "To me, in my mind, if you're in handcuffs, you're arrested . . . I've been, unfortunately, arrested a couple of times. And once the handcuffs are on, in my mind,

you're going in." (Doc. # 39-1, pp. 45-46).[3] Thus, Plaintiff has admitted that he was under arrest as soon as Ranger Brannon placed him in handcuffs.

Furthermore, Plaintiff's argument is undermined by the weight of Fourth Amendment authority. "The use of firearms, handcuffs, and other forceful techniques generally exceed the scope of an investigative detention and enter the realm of an arrest." *Cortez v. McCauley*, 478 F. 3d 1108, 1116 (10th Cir. 2007) (quoting *United States v. Melendez-Garcia*, 28 F.3d 1046, 1052 (10th Cir.1994) (internal quotation marks omitted)). Although special circumstances may sometimes justify the use of handcuffs during an investigatory detention, *see, e.g. Gallegos v. City of Colo. Springs*, 114 F.3d 1024, 1030 (10th Cir. 1997), Plaintiff has not alleged that any of those circumstances were present in this case. Therefore, there can be no genuine dispute that Plaintiff was under arrest when he was handcuffed and placed in a patrol car. Thus, it was Ranger Brannon, not Corporal Calkins, who arrested Plaintiff.

Plaintiff also argues, however, that Corporal Calkins is liable for false arrest because he admitted at his deposition "that he, not Brannon, was the arresting officer." (Doc. # 38, ¶ 32). This argument is unavailing.

---

[3] Plaintiff claims that he did not know the difference between an investigatory detention and an arrest (Doc. # 38, ¶ 27). But he fails to explain how this alleged lack of knowledge impacts the Court's analysis. "[A]n individual is 'seized' when he has an objective reason to believe that he is not free to terminate his conversation with the officer and proceed on his way." *United States v. Patten*, 183 F.3d 1190, 1194 (10th Cir. 1999). Plaintiff admits that when Ranger Brannon placed him in handcuffs, he had an objective reason to believe that he had been arrested. Therefore, for purposes of the Court's Fourth Amendment analysis, Plaintiff was arrested when he believes he was arrested – regardless of whether he knew the difference between an investigatory detention and an arrest.

First, this argument is misleading. Corporal Calkins did not admit that he arrested Plaintiff. Rather, when asked whether he agreed with the booking form – a pre-prepared, fill-in-the-blank form – Calkins admitted that he had put his own name in the blank space for "Arresting Officer." (Doc. # 38-1, p. 81). But this is not the same as admitting that he arrested Plaintiff. As explained above, Corporal Calkins completed Plaintiff's booking paperwork because Ranger Brannon was unable to do so. The blank space for "Arresting Officer" was the only space for Corporal Calkins to identify himself as the person completing the booking from. (*See* Doc. # 38-1, p. 156). The form did not provide any space for Corporal Calkins to explain the circumstances of the arrest in detail – i.e., that although Ranger Brannon had taken Plaintiff into custody, Brannon was being transported to the hospital, and Corporal Calkins was completing the booking paperwork in his stead. (Doc. # 38-1, p. 156). Thus, the Court is not persuaded that Corporal Calkins "admitted" having arrested Plaintiff.

Second, even if Corporal Calkins had made an unqualified admission that he, not Brannon, had placed Plaintiff under arrest, Plaintiff would still not necessarily have a false-arrest claim against Calkins. For purposes of a Fourth Amendment claim "an individual is 'seized' when he has an objective reason to believe that he is not free to terminate his conversation with the officer and proceed on his way." *United States v. Patten*, 183 F.3d 1190, 1194 (10th Cir. 1999). In other words, it is immaterial, for purposes of a Fourth Amendment analysis, which officer identifies himself as the "arresting officer." What matters is which officer gave the Plaintiff an objective reason to believe that he was under arrest. In this case, that officer was Ranger Brannon. Plaintiff

admits that, as soon has Ranger Brannon placed him in handcuffs, Plaintiff had an objective reason to believe – and did in fact believe – that he was under arrest. Therefore, there can be no genuine dispute that Ranger Brannon, not Corporal Calkins, arrested Plaintiff, and Plaintiff's false arrest claim against Corporal Calkins must fail as a matter of law.

    2.    <u>Plaintiff's Arrest was Supported by Arguable Probable Cause</u>

Furthermore, even if Corporal Calkins had been the one to arrest Plaintiff, Plaintiff's false arrest claim would still fail because the arrest was supported by arguable probable cause.

"In the context of a qualified immunity defense on an unlawful search or arrest claim, we ascertain whether a defendant violated clearly established law by asking whether there was 'arguable probable cause' for the challenged conduct." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) (quoting *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012)). "Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." *Id*. A defendant "is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." *Id*. (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir.2007)).

The "assessment of probable cause must be based on what the officer knew at the time." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). "Probable cause requires only a 'fair probability' of illegal conduct, not 'proof that something is more likely true than false.'" *Meadows v. The City of Oklahoma City*, No. 20-6041, 2021 WL 1098620, at *2

9

(10th Cir. Mar. 23, 2021) (*quoting U.S. v. Denson*, 775 F.3d 1214, 1217 (10th Cir. 2014)); *see also Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir.2011) (Probable cause is does not "require the suspect's guilt to be 'more likely true than false.' Instead, the relevant question is whether a 'substantial probability' existed that the suspect committed the crime, requiring something 'more than a bare suspicion.'").

Plaintiff was arrested on charges of Assault in the Second Degree (Colo. Rev. Stat. § 18-3-203(1)(c)) and Obstructing a Peace Officer (Colo. Rev. Stat. § 18-8-104(1)(a)). (Doc. # 32-1, p. 95). A person commits the crime of Assault in the Second Degree if he "intentionally causes bodily injury to any person" with "intent to prevent . . . a peace officer . . . from performing a lawful duty." Colo. Rev. Stat. § 18-3-203(1)(c). A person commits the crime of Obstructing a Peace Officer when, "by using or threatening to use violence, force, physical interference or an obstacle, such person knowingly obstructs, impairs, or hinders the enforcement of the penal law or the preservation of the peace by a peace officer." Colo. Rev. Stat. § 18-8-104(1)(a). There was ample evidence to support probable cause on each of these charges:

- Corporal Calkins reported to the scene in response to Ranger Brannon's request for "emergent cover" (Doc. # 32-1, p. 103);
- When Corporal Calkins arrived on scene, Ranger Brannon informed him that he had been assaulted by three campers (Doc. # 32, ¶ 34);
- Brannon identified those three campers as Troy Rael, Nathaniel Rael, and Plaintiff, Noah Rael (Doc. # 32, ¶ 34);

- Brannon told Corporal Calkins that he had contacted the campers for the purpose of enforcing campground regulations when one of the campers, Troy Rael, assaulted him (Doc. # 32-1, p. 102);
- As Brannon attempted to take Troy Rael into custody, the two other campers, whom Brannon identified as Nathaniel Rael and Plaintiff, jumped in and "Dog-piled" Brannon (Doc. # 32-1, p. 102);
- Brannon reported that he had been punched three times in the side of the head (Doc. # 32-1, p. 102);
- Brannon could not identify which of the three campers punched him, but he reported that "they had all jumped on him and began assaulting him as he was trying to take TROY into custody" (Doc. # 32-1, p. 102);
- Corporal Calkins observed swelling and red marks on the side of Ranger Brannon's head (Doc. # 32, ¶ 30);
- Corporal Calkins observed that Ranger Brannon was sweating profusely (Doc. # 32);
- Corporal Calkins observed that Ranger Brannon's pants were dirty from the knees down and that his uniform shirt was disheveled (Doc. # 32, ¶ 30);
- Corporal Calkins observed that Ranger Brannon had to lean against his vehicle to catch his breath (Doc. # 32, ¶ 30);
- Before Corporal Calkins ever spoke with Plaintiff, Plaintiff had been handcuffed by Ranger Brannon and placed in the back of a patrol car. (Doc. # 32, ¶¶ 26, 39).

11

Plaintiff does not dispute any of these facts. (*See* Doc. # 38, pp. 2-3). Under the circumstances of this case, these facts are more than sufficient to establish arguable probable cause that Plaintiff had committed a crime. Therefore, Plaintiff's arrest was supported by arguable probable cause, and his false arrest claim against Calkins must fail as a matter of law.

Plaintiff argues, however, that Brannon's story was "fishy" (Doc. # 23, ¶¶ 85-56), and that Corporal Calkins should have disbelieved it. This argument fails.

First, Plaintiff undermines his own argument on this point. Although Plaintiff describes Ranger Brannon's on-scene report as "utterly flimsy," he apparently concedes that Brannon's statements were sufficiently reliable to justify taking Plaintiff into custody, handcuffing him, and detaining him in the back of a patrol car on the suspicion that he had committed a crime. (*See* Doc. # 38, p. 13 ("Plaintiff has never asserted that Calkins violated his rights when he was initially placed into custody.")).

Next, Plaintiff fails to offer a convincing reason why Calkins should have disbelieved Brannon. It is well established that an officer can rely on statements of other officers when making a probable cause determination: "Police officers are entitled to rely upon information relayed to them by other officers in determining whether there is reasonable suspicion to justify an investigative detention or probable cause to arrest," as long as such reliance is "objectively reasonable." *Oliver v. Woods*, 209 F.3d 1179, 1190–91 (10th Cir. 2000). As explained above, it was "objectively reasonable" for Corporal Calkins to rely on Ranger Brannon's statements. Brannon's report was consistent with the physical evidence and with Corporal Calkins's own observations of

the scene, and Corporal Calkins had no reason to doubt Brannon's veracity. Indeed, Brannon later filed a written report reaffirming what he told Corporal Calkins at the scene. (*See* Doc. # 32-1, p. 80). Brannon also told the prosecuting attorney that he believed his on-scene identification had been correct. (Doc. # 39-1, p. 124). Though Plaintiff now claims that Brannon "backtracked" on his identification at the scene, Plaintiff offers no evidence that Brannon ever expressed any doubt to Corporal Calkins that Plaintiff had been correctly identified as one of the assailants. Thus, Plaintiff has failed to establish that Corporal Calkins's reliance on Brannon's statements was not "objectively reasonable under the circumstances." (Doc. # 38, p. 2).

Plaintiff next argues, however, that Corporal Calkins was "willfully ignorant of [a] mountain of exculpatory evidence" that would have undermined Brannon's initial report. (Doc. # 38, p. 16). This argument also fails.

Far from offering a "mountain of exculpatory evidence," the only piece of evidence Plaintiff cites in this entire 5-page section of his Response brief is Brannon's alleged lack of credibility: Plaintiff contends that Corporal Calkins's probable-cause determination was undermined by "the utterly flimsy basis of Brannon's identification and the fact that he backtracked on it at the scene." (Doc. # 38, p. 16; *see also* Doc. # 38, pp. 13-18). The Court has already addressed Brannon's credibility, and it rejects Plaintiff's credibility challenge for the reasons stated above.

Plaintiff also contends that one of the on-scene witnesses, Alex Morales, told an officer at the scene that Plaintiff had not been involved in the scuffle. (Doc. # 38, ¶ 7). According to Morales, the third person involved in the incident was either Damius Rael

13

or Gustavo Carillo.[4] (Doc. # 38, ¶ 7). Plaintiff has failed to establish that Morales's statements undermine arguable probable cause.

First, the record does not support Corporal Calkins was "willfully ignorant" of Morales's statement. Plaintiff cites no evidence that any officer on scene made any effort to relay this information to Corporal Calkins, or that Corporal Calkins was even aware Morales had been interviewed. Although Plaintiff implies that Corporal Calkins was obliged to conduct a personal interview with every officer at the scene, he cites no authority to support that suggestion. To the contrary, Colorado law suggests that no additional investigation was necessary. "[T]he state law with respect to arrest is looked to for guidance as to validity of the arrest since the officers are subject to those local standards." *Wells v. Ward*, 470 F.2d 1185, 1187 (10th Cir. 1972). Under Colorado law, "absent a showing of official actions in bad faith, defendant has no constitutional right to require the state to investigate or gather potentially exculpatory evidence on his behalf." *People v. Braxton*, 807 P.2d 1214, 1217 (Colo. App. 1990). *See also People v. Culp*, 537 P.2d 746 (Colo. 1975) ("The State may not suppress evidence, but it need not gather evidence for the accused."). Thus, Plaintiff has failed to demonstrate that, under the circumstances of this case, Corporal Calkins had any obligation to investigate further – much less that he deliberately ignored exculpatory evidence.

Next, even if Corporal Calkins had been aware of Morales's statement, the statement would not have caused probable cause to dissipate. Morales himself

---

[4] Although Plaintiff does not expressly argue that this constituted "exculpatory evidence," the Court has considered it in an effort to view all available evidence in the light most favorable to Plaintiff.

admitted that he could not identify the third assailant (Doc. # 32, ¶ 36), and the fact that he is related to Plaintiff – Plaintiff is Morales's stepfather (Doc. # 32, ¶ 35) – suggests that he is not an unbiased witness.

Further, while officers "may not ignore available and undisputed facts," *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1259 (10th Cir. 1998), Morales's on-scene statement was not "undisputed"; Ranger Brannon contradicted Morales's position both at the scene and in his written report. (Doc. # 32-1, p. 80).

Finally, Plaintiff implies, though he does not expressly argue, that Corporal Calkins was obligated to interview Plaintiff before transporting him to the jail to determine whether he claimed to be innocent. (Doc. # 38, ¶ 29; Doc. # 38, p. 19). This argument also fails. It is undisputed that Corporal Calkins spoke to Plaintiff on scene, and that Plaintiff never protested his innocence to Calkins. And even if he had, "[a] policeman . . . is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Romero v. Fay*, 45 F.3d 1472, 1478 (10th Cir.1995) (*quoting Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir.1988))). Therefore, Plaintiff has failed to establish that Corporal Calkins had any obligation, under the circumstances of this case, to interview Plaintiff before transporting him to jail.

Plaintiff is essentially arguing that Corporal Calkins should be charged with knowledge of every fact, disputed or undisputed, known to every officer on scene that night. He cites no authority to support this argument. "The standard for evaluating

15

probable cause is whether the officer has 'reasonably trustworthy' information sufficient to lead a prudent person to believe that the person arrested has committed the offense." *Baptiste*, 147 F. 3d at 1259. As discussed above, Corporal Calkins did have such information, so the arrest was supported by arguable probable cause.

**B.     MALICIOUS PROSECUTION**

Calkins next argues that he is entitled to summary judgment on Plaintiff's malicious prosecution claim. Again, the Court agrees with Calkins.

To succeed on a § 1983 claim for malicious prosecution, the plaintiff must establish (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages. *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008). Plaintiff's malicious prosecution claim must fail as a matter of law because he cannot prove that Corporal Calkins acted with malice.

Plaintiff offers no evidence from which the Court, or a jury, could infer that Plaintiff acted with malice. As discussed above, there was arguable probable cause to believe Plaintiff had committed the crimes charged. Thus, Corporal Calkins had an objectively reasonable basis to arrest Plaintiff, to file an affidavit in support of warrantless arrest, and to charge him with a crime. *See Stonecipher*, 759 F.3d at 1147 (a malicious prosecution claim must fail if the officer's conduct was supported by arguable probable cause and the plaintiff provides no other basis to infer malice).

Further, even if Corporal Calkins had not had arguable probable cause, Plaintiff's malicious prosecution claim would still fail for lack of evidence. "[W]ant of probable cause is evidence of malice, but it is not the same thing; and unless it is shown that both concurred in the prosecution, or that the one was combined with the other in making or instigating the charge, the plaintiff is not entitled to recover." *Wheeler v. Nesbitt*, 65 U.S. 544, 550 (1860). Plaintiff provides no basis to infer that Corporal Calkins acted with malice. His Complaint and his Response to the summary judgment motion rely instead upon conclusory allegations, rhetorical questions, and speculation. (*See* Doc. # 38, p. 19). These conclusory allegations do not establish a constitutional violation. *Jenkins*, 81 F.3d at 994 ("[C]onclusory allegations are not sufficient to state a constitutional violation.").

Moreover, Plaintiff has never disputed that Corporal Calkins provided truthful and accurate information to the prosecuting attorney. Although "the fact that a government lawyer makes the final decision to prosecute does not automatically immunize an officer from liability for malicious prosecution," the fact that an officer provided truthful information to the prosecuting attorney undercuts a claim of malicious prosecution. *Stonecipher*, 759 F. 3d at 147. Such is the case here. Therefore, Plaintiff's malicious prosecution claim must fail as a matter of law.

## C.  FIRST AMENDMENT RETALIATION

Finally, Plaintiff alleges that Corporal Calkins arrested him in retaliation for violating exercising his First Amendment rights. (Doc. # 23, ¶¶ 112-117). Specifically, Plaintiff claims that he "began videoing [sic] the law enforcement response shortly after

17

the scuffle," and that video-recording police officers is protected speech under the First Amendment. (Doc. # 38, p. 19).

Corporal Calkins argues that Plaintiff's First Amendment retaliation claim must fail for lack of evidence. The Court agrees with Corporal Calkins.

First, as discussed above, Corporal Calkins did not arrest Plaintiff; Ranger Brannon did. Thus, Plaintiff has no First Amendment claim against Calkins arising from his arrest.

Next, even if Plaintiff could prove that Corporal Calkins did arrest him, Plaintiff cannot establish retaliation. To establish a First Amendment retaliation claim, the plaintiff must demonstrate that the defendant's conduct "substantially motivated" by the plaintiff's protected conduct. *Nielander v. Bd. of Cty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009). In this case, Plaintiff has failed to show that Corporal Calkins was even aware of Plaintiff's allegedly protected conduct, let alone that Calkins was "substantially motivated" to arrest him because of it.

Next, Plaintiff has failed to establish that, on the date of his arrest, he had a "clearly established right" to video-record law enforcement. When a defendant raises the qualified-immunity defense, the plaintiff must establish that (1) the defendant violated a federal statutory or constitutional right and (2) the right was clearly established at the time of the defendant's conduct. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589. (2018). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (*quoting Reichle v. Howards*, 566 U.S. 658, 664, 132

18

S.Ct. 2088, 182 L.Ed.2d 985 (2012)). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Wesby*, 138 S. Ct. at 589. Accordingly, the Supreme Court has repeatedly admonished circuit courts "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). Though "a case directly on point" is not required, "existing precedent must have placed the constitutional question regarding the illegality of the defendant's conduct beyond debate." *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir.). In this case, Plaintiff has failed to offer any Tenth Circuit or Supreme Court precedent sufficient to place "the illegality of the defendant's conduct beyond debate." *Id*. Therefore, he has failed to establish the violation of clearly established right, and his First Amendment claim must fail as a matter of law.

Finally, Plaintiff's First Amendment retaliation claim fails because Corporal Calkins had arguable probable cause to arrest him. A First Amendment retaliation arrest claim fails where there is probable cause for the arrest on other grounds. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1725 (2019). *See also Fenn v. City of Truth or Consequences*, 983 F.3d 1143, 1148 (10th Cir. 2020). ("The presence of probable cause, therefore, is a bar to a First Amendment retaliation claim, and Fenn has not shown a lack of probable cause here."). As discussed above, there was arguable probable cause for Plaintiff's arrest. Accordingly, Corporal Calkins is entitled to qualified immunity and summary judgment in his favor on Plaintiff's First Amendment retaliation claim.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. # 32) is GRANTED.   It is

FURTHER ORDERED that the Final Pretrial Conference set for February 1, 2022 and four-day Jury Trial set for February 14, 2022 are VACATED.

The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff.

DATED:  January 25, 2022

BY THE COURT:

*[signature]*
CHRISTINE M. ARGUELLO
United States District Judge